IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

STEVEN HOLLOWAY, JR.,

    *Plaintiff*,

v.

CORRECTIONAL OFFICER JAMAINE
ANDERSON, *et al.*,

    *Defendants*.

CIVIL ACTION
NO. 17-00225

**PAPPERT, J.**      July 23, 2018
**MEMORANDUM**

    Steven Holloway, Jr. was an inmate at State Correctional Institute-Chester ("SCI-Chester") on August 30, 2016 when he was allegedly assaulted by Correctional Officer Jamaine Anderson. Holloway claims that another Correctional Officer, Sergeant Michael Velasquez, was present but failed to protect Holloway from Anderson.

    Holloway sued Anderson, Velasquez, and Correctional Officer Doe, who is also alleged to have witnessed but failed to stop Anderson's assault. Holloway asserts against Anderson a Section 1983 excessive force claim in violation of his Eighth and Fourteenth Amendment rights (Count 1) and assault and battery under Pennsylvania law (Count 4). Holloway alleges that Velasquez and Doe "failed to intervene" to protect Holloway, again pursuant to 42 U.S.C. § 1983 and the Eighth and Fourteenth Amendments (Count 2). Holloway further asserts a claim against all Defendants for retaliation, purportedly in violation of his First Amendment rights (Count 3). Velasquez moved to dismiss the Second Amended Complaint (ECF No. 34) and the Court granted the motion in part, dismissing the retaliation claim in its entirety and

1

the failure to intervene claim against Velasquez in his official capacity (ECF No. 42). He moves now for summary judgment with respect to the failure to intervene claim brought against him in his individual capacity. (Mot. for Summ. J., ECF No. 53.) Holloway urges the Court to watch the video "because [it] speaks for itself." (Pl. Resp. in Opp. at 3, 6, ECF No. 55.) Holloway is correct—and based on the video, the Court concludes that no reasonable juror could return a verdict for Holloway on his failure to intervene claim.

I

Holloway began serving his prison sentence in April 2014 and was transferred to SCI-Chester that August. (Mot. for Summ. J., Ex. B ("Holloway Dep.") at 16:23–18:3.) He was returning to his cell around 8:00 p.m. on August 30, 2016, when he asked Anderson to open his cell door. (*Id.* at 19–21.) Thinking that Anderson was ignoring his request, Holloway walked back to the officer desk and confronted Anderson. (*Id.* at 21:17-24.) Holloway then approached Velasquez who was walking into the day room where the desk was located. (*Id.*)

According to Velasquez, Holloway was ranting and somewhat incoherent; he told Velasquez that Anderson would not let Holloway back into his cell. (Mot. for Summ. J., Ex. D ("Velasquez Dep.") at 19.) Holloway agreed to go back inside and wait by his cell door while Velasquez spoke to Anderson. (*Id.* at 21.) Once inside, Holloway did not go directly to his cell door but instead lingered between the cell door and the officer desk. (*Id.* at 22–24.) In response to questions from Velasquez, Anderson explained that the monitor at the officer desk showed that Holloway's cell door was already open. (*Id.* at 24–26.)

Anderson went to turn off the televisions in the day room while Velasquez remained seated at the officer desk with his back to Holloway. (*Id*. at 26:12-22.) The prison camera, which captured the area in front of the officer desk, recorded the following sequence of events. (Mot. for Summ. J., Ex. B ("Video").) As Anderson is walking back to the officer desk, he passes Holloway and they appear to bump each other. (Video at 0:43.)[1] Two seconds later, Holloway and Anderson turn toward one another and appear to exchange words. (Video at 0:45.) Holloway and Anderson continue to move around the day room, chest to chest. (*Id*. at 0:45-0:55.) Anderson then points in Holloway's face (*id*. at 0:55), and while remaining close to Holloway, turns toward the officer desk and appears to say something which Holloway claims was "I'm going to beat this motherfucker up" (*id*. at 0:58; Holloway Dep. at 25:22–26:1).

Six seconds later, Holloway and Anderson grab each other and begin to struggle. (Video at 1:04.) Anderson punches Holloway (*id*. at 1:07) and throws him to the ground (*id*. at 1:11). Five seconds after the first punch, Velasquez enters the video frame while simultaneously placing his radio in his holster and walking toward Anderson and Holloway. (*Id*. at 1:12.)[2] As Velasquez approaches the pair, Anderson is on top of Holloway while Holloway is punching Anderson's back. (Video at 1:12-1:18.) Velasquez tries to restrain Holloway and from this point forward, Anderson does not punch, shove, or kick Holloway. (*Id*. at 1:18; Velasquez Dep. at 102:18–103). Velasquez grabs Holloway's arm and leg, places handcuffs on one of Holloway's hands, pushes Anderson off Holloway, and finishes handcuffing Holloway. (Video at 1:16-1:40.) Fifty-seven

---

[1] The video starts at timestamp 0:00.

[2] Velasquez testified that once he saw the fight break out, he radioed central control to notify other officers of the altercation and request assistance. (Velasquez Dep. at 39:23–40:7.)

3

seconds elapse from the time Holloway and Anderson's shoulders touched until Holloway was restrained and the fight ended; a mere thirty-six seconds elapse between the moment Velasquez sees the fight start and everything ends.

II

Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the nonmoving party, the moving party is entitled to judgment as a matter of law. *Smathers v. Multi-Tool, Inc./Multi-Plastics, Inc. Emp. Health & Welfare Plan*, 298 F.3d 191, 194 (3d Cir. 2002); *see also* Fed. R. Civ. P. 56(c). A genuine issue of material fact exists when "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). A mere scintilla of evidence in support of the nonmoving party will not suffice; there must be evidence by which a jury could reasonably find for the nonmoving party. *Id.* at 252. Summary judgment is appropriate where "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

In reviewing the record, a court "must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Prowel v. Wise Bus. Forms*, 579 F.3d 285, 286 (3d Cir. 2009). The court may not, however, make credibility determinations or weigh the evidence in considering motions for summary judgment. *See Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000); *see also Goodman v. Pa. Tpk. Comm'n*, 293 F.3d 655, 665 (3d Cir. 2002). Where there is video evidence that contradicts the testimony of an opposing party, the Court should not adopt the nonmoving party's facts over the clear video evidence to the contrary. *Scott v.*

*Harris*, 550 U.S. 372, 380 (2007); *see, e.g.*, *Fennell v. Cambria County Prison*, 607 F. App'x 145, 148 (3d Cir. 2015) (finding the district court properly relied on the videotape of alleged excessive force by an officer against a state prisoner in resolving any factual disputes); *McDowell v. Sheerer*, 374 F. App'x 288, 291 (3d Cir. 2010) (stating that where there are video recordings of the incident in question, the court need not adopt the nonmovant's version of the facts if the recording contradicts the nonmovant's story).

### III

Since Holloway was serving a sentence, his excessive force claim is analyzed under the Eighth Amendment. *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989). Velasquez can be liable for failing to intervene in the fight between Anderson and Holloway only if Anderson's conduct amounted to a constitutional violation and Velasquez "had a reasonable opportunity to intervene and simply refused to do so," *Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002). *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010).[3]

There is no evidence that Velasquez had the opportunity to intervene yet failed to do so. *Cf. Smith*, 293 F.3d at 653 (reversing the district court's dismissal of a failure to intervene claim where there was evidence that the officer stood watching a beating through an open door but did nothing to intervene); *Kates v. Packer*, No. 13-01525, 2018 WL 724444, at *5 (M.D. Pa. Feb. 6, 2018) (denying summary judgment where there was a genuine issue of fact as to whether the officer watched an inmate get attacked for thirty to forty five seconds without intervening). In fact, the video demonstrates the opposite: Velasquez immediately attempted to break up the fight between Holloway

---

[3] Velasquez does not contest Anderson's alleged Eighth Amendment violation. For the purposes of this Motion, the Court will address only whether Velasquez failed to intervene during the violation.

5

and Anderson. Within twelve seconds of Anderson grabbing Holloway, Velasquez called for backup, reached the combatants and started to restrain Holloway. (Video at 1:04-1:16.) From this moment forward, Anderson did not punch, kick, or hit Holloway again. (*Id.* at 1:18.)

Velasquez intervened and broke up the fight as fast as reasonably possible. Perhaps acknowledging this, Holloway nonetheless argues that Velasquez "never intervened" because Velasquez did not "remove [ ] Anderson [from on top of Holloway] in any way." (Pl. Resp. in Opp. at 10.) This characterization misrepresents the video. Before pushing Anderson off Holloway, Velasquez attempted to handcuff Holloway pursuant to prison protocol, something Holloway admits was appropriate: "Obviously Defendant Velasquez was correct in handcuffing Plaintiff—the safety of all of the other inmates and guards clearly justify the handcuffing." (Pl. Resp. in Opp. at 10; *see also* Velasquez Dep. at 102:18–103.)[4]

An appropriate Order follows.

BY THE COURT:

***/s/ Gerald J. Pappert***
GERALD J. PAPPERT, J.

---

[4] Velasquez argues that he is protected by qualified immunity. To overcome qualified immunity, Holloway must show: (1) that Velasquez violated a constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct. *Mammaro v. New Jersey Div. of Child Prot. & Permanency*, 814 F.3d 164, 168–69 (3d Cir. 2016) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731 (2011)). Because Velasquez did not violate Holloway's constitutional rights, the Court need not address the qualified immunity defense.